UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FRANK COBLE, | CASE NO. C11-0498 RSM |
| Plaintiff, | ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| ANITA RENFROE and ANITA RENFROE LLC, | |
| Defendants. | |

This matter comes before the Court on Defendants' Motion for Summary Judgment. Dkt. # 20. Plaintiff commenced this action against Defendants on March 21, 2011, asserting claims for copyright infringement under the United States Copyright Law, and unfair competition and false designation of origin under the Lanham Act.[1] Defendants move for summary judgment on both claims, asserting that Plaintiff cannot show that the works at issue are substantially similar, that Plaintiff has not used a legally cognizable mark in commerce, and that Plaintiff cannot, in any event, establish any likelihood of confusion. Dkt. # 20.

---

[1] Although Plaintiff was initially represented by counsel, he is now proceeding *pro se*.

Having reviewed the motion, Plaintiff's response, Dkt. # 32,[2] and Defendants' reply, Dkt. # 34, Defendants' motion is GRANTED.

## I. BACKGROUND

This case centers upon two humorous songs – both regarding the general subject of mothers – composed by two comedians:  Plaintiff Frank Coble and Defendant Anita Renfroe.[3] Plaintiff is a full time artist who also performs standup comedy.  Renfroe is a full-time professional singer, songwriter and comedian.  Renfroe is well-known for her comedy targeted at women, specifically mothers, and she has performed in this genre since 1998.

Sometime prior to July 2005, Plaintiff developed lyrics for a song based on his own interactions with his mother, and he entitled that composition, the "Mom Song."  Plaintiff first publicly performed the "Mom Song" – delivered as a non-melodic rap against the backdrop of a drumbeat – on July 3, 2005.  Although the record contains various different versions of this song, when the Court refers to the "Mom Song," it refers to the following lyrics, which are representative of the various different versions:

---

[2] More than two months after the instant motion had been noted and fully briefed, Plaintiff moved to amend his response, Dkt. ## 41-42, and Defendants opposed that motion.  Dkt. # 43. Although the Ninth Circuit has held that "procedural requirements should be more liberally construed for pro se litigants," *Abassi v. INS*, 305 F.3d 1028, 1032 (9th Cir. 2002), "[p]ro se litigants must follow the same rules of procedure that govern other litigants." *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987).  Here, the Court previously granted Plaintiff an extension to file his response, at which time it admonished him to comply with the Federal Rules of Civil Procedure and the Local Rules of this Court, and advised him that the Court "will not grant any further motions for extensions of time or other deviations from the rules except where there is actual good cause, supported by a sworn and signed declaration."  Dkt. # 33.  Plaintiff's motions to amend his response are inconsistent with the Court's previous order, and he has not demonstrated good cause for his failure to comply with that order.  Therefore, Dkt. ## 41-42 are STRICKEN, and are not considered by the Court.

[3] Defendant Anita Renfroe LLC is a limited liability owned and controlled by Renfroe.

1
2

> Get upstairs and pick up your room.  Or I'm going to whip you with a wooden spoon.  Get upstairs and make up your bed.  Or I'm going to slap you upside the head.
>
> It's time to get up.  Get up now.  It's time to get out of bed.  Don't be a sleepy head.  Hurry up and get ready for school.  Otherwise you end up being a stupid fool.  Eat all your food and don't give me none of your lip.  Or I'll send you off to Africa on a freight ship.  Eat all your food.  Now eat it, now!  Turn off the TV and hit the hay.  Otherwise you'll be looking for another place to stay.  Now get ready for bed.  Otherwise I'm going slap you upside the head.  Why?  Because I'm the Mom.

3
4
5
6

7   Dkt. # 32, p. 2–3.

8          In June 2006, Plaintiff attended the "Christian Comedy Association Annual Event" and

9   performed the first four sentences of the "Mom Song."  Renfroe was present at that event and

10  does not dispute having heard the first four sentences.  After his performance, Plaintiff alleges

11  that he spoke directly with Renfroe and recited the remaining lyrics of the "Mom Song" to her.

12         Subsequently, in 2007, Renfroe publicly performed a song entitled "Momisms," which is

13  a musical compilation of all the things that, in Renfroe's view, a mother would say to her

14  children throughout a typical day.  In the song, Renfroe harmonizes her lyrics on this subject

15  with the music of the William Tell Overture, which plays in the background.  Dkt. # 21, ¶¶ 11-

16  13.  In November 2007, Defendants publically released a DVD containing the "Momisms" song.

17  *Id.* ¶ 12, Ex. I at 44:20,

18         In April of 2008, Plaintiff first accused Renfroe of "stealing his idea" and began

19  demanding compensation in connection with Defendants' "Momisms" song.  Plaintiff filed this

20  lawsuit in March of 2011 and registered a copyright for the "Mom Song" later that month.[4]

21  Defendants now move for summary judgment.

22

23  _____

24  [4] There is no evidence before the Court that Plaintiff registered the "Mom Song" mark.

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 3

1

2                                     II. <u>ANALYSIS</u>

3          A.       <u>Standard of Review</u>

4          Summary judgment is proper if the pleadings, discovery, affidavits and disclosure

5   materials on file show that "there is no genuine dispute as to any material fact and the movant is

6   entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a) & (c) (as amended December 1,

7   2010).  An issue is "genuine" if "a reasonable jury could return a verdict for the nonmoving

8   party" and a fact is material if it "might affect the outcome of the suit under the governing law."

9   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

10         The moving party is entitled to judgment as a matter of law when the nonmoving party

11  fails to make a sufficient showing on an essential element of a claim in the case on which the

12  nonmoving party has the burden of proof.  *Celotex Corp. v. Cartett*, 477 U.S. 317, 323 (1986).

13  The Court resolves any factual disputes in favor of the nonmoving party only when the facts

14  specifically attested by each party are in contradiction.  *T.W. Elec. Serv., Inc. v. Pac. Elec.*

15  *Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

16         B.       <u>Copyright</u>

17         Defendants first move for summary judgment on Plaintiff's claim of copyright

18  infringement.  A plaintiff alleging copyright infringement must show "(1) ownership of a valid

19  copyright, and (2) copying of constituent elements of the work that are original."  *Feist Pubs.,*

20  *Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).  For purposes of this analysis, the Court

21  assumes that Plaintiff owns a valid copyright over the "Mom Song," and that he therefore

22  satisfies the first prong.

23

24

1    To satisfy the second prong, a plaintiff must "demonstrate a triable issue of fact whether

2    [the defendant] 'cop[ied] anything that was 'original' to' [Plaintiff's] work." *Funky Films, Inc.*

3    *v. Time Warner Entertainment Co., L.P.*, 462 F.3d 1072, 1076 (9th Cir. 2006) (*citing Feist Pubs.,*

4    *Inc.*, 499 U.S. at 361). A plaintiff may use direct or circumstantial evidence to show that the

5    defendant copied the work at issue. *Id.* Circumstantial evidence consists of proof "that the

6    defendant had 'access' to the plaintiff's work and that the two works are 'substantially similar.'"

7    *Funky Films, Inc.*, 462 F.3d at 1076 (*citing Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481

8    (9th Cir. 2000)). Here, because Plaintiff has not presented any direct evidence that Defendants

9    copied the "Mom Song," the Court will analyze the circumstantial evidence before it regarding

10   the issues of access and substantial similarity.

11          1.      *Access*

12   There is no dispute that Renfroe viewed at least a portion of Plaintiff's "Mom Song"

13   during the 2006 conference. Although Plaintiff alleges that he also recited additional lyrics

14   directly to Renfroe during the conference, Defendants deny that claim. Because these conflicting

15   claims present a question of fact, the Court will resolve the issue in favor of Plaintiff, the non-

16   moving party. *See T.W. Elec. Serv., Inc.*, 809 F.2d at 631. Thus, for purposes of the instant

17   motion, the Court assumes that Defendants had access to the "Mom Song." *Id.*

18          2.      *Substantial Similarity*

19   In order to sustain his claim for copyright infringement, Plaintiff must also demonstrate

20   substantial similarity between the "Mom Song" and "Momisms" song. For the reasons set forth

21   below, Plaintiff is unable to satisfy this burden.

22   "When the issue is whether two works are substantially similar, summary judgment is

23   appropriate if no reasonable juror could find substantial similarity of ideas and expression."

24

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 5

1   *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994); *Funky Films,*

2   *Inc.*, 462 F.3d at 1076.  At summary judgment, the substantial similarity test is an "extrinsic test"

3   that "depends not on the responses of the trier of fact, but on specific criteria which can be listed

4   and analyzed."  *Funky Films, Inc.*, 462 F.3d at 1077 (*quoting Krofft Television Productions, Inc.*

5   *v. McDonald's Corp.*, 562 F.2d 1157, 1164 (9th Cir. 1977)).

6           The specific criteria employed by the court may include elements such as "plot, themes,

7   dialogue, mood, setting, pace, characters, and sequence of events."  *Kouf*, 16 F.3d at 1045.

8   When comparing musical compositions, the court may also compare musical components such

9   as "melody, harmony, rhythm, pitch, tempo, phrasing, structure, chord progressions, and lyrics."

10  *Swirsky v. Carey*, 376 F.3d 841, 849 (9th Cir. 2004) (*citing Ellis v. Diffie*, 177 F.3d 503, 506 (6th

11  Cir. 1999)).

12          The court "must take care to inquire only 'whether the protectable elements, standing

13  alone, are substantially similar.'"  *Williams v. Crichton*, 84 F.3d 581, 588 (2d Cir. 1996) (*quoting*

14  *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442–43 (9th Cir. 1994)).  In other

15  words, the court "must filter out and disregard the non-protectible [sic] elements in making its

16  substantial similarity determination."  *Cavalier*, 297 F.3d at 822.  Non-protectable elements

17  include "general plot ideas" and "familiar stock scenes and themes that are staples of literature."

18  *Berkic*, 761 F.2d at 1293-94; *Cavalier*, 297 F.3d at 823.

19          Although Plaintiff identifies a number of generic similarities between his "Mom Song"

20  and Defendants' "Momisms" song, those similarities, taken together, do not render the two

21  compositions "substantially similar" for purposes of the copyright law.  Indeed, the similarities

22  identified by Plaintiff relate to non-protectable elements.  For example, Plaintiff notes that both

23  songs concern "all the things a mom says to her kids throughout the day" and cover topics such

24

as "bed making," "food eating," "room cleaning," and "going to bed."  Dkt. # 32, p. 9-10.

Plaintiff points out that "Momisms" "has drum beats in it" and the "[s]ame fast tempo" as the

"Mom Song."  *Id.* at p. 15.  Additionally, according to Plaintiff, the songs are similar in that "half

of the joke . . . is 'how fast moms can spit out orders to their kids like a drill sergeant.'"  *Id*.

But even a cursory comparison of the two songs reveals "greater, more significant

differences" in genre, tempo, key, melody, presentation, and lyrics.  *See Swirsky*, 376 F.3d at

849.  To begin, there are several clear differences with respect to the forms of the two songs.

There is no dispute, for example, that the works are of different genres – Plaintiff describes his

"Mom Song" as a rap, whereas Defendants' "Momisms" song is delivered to the tune of a well-

known classical composition.  Although Plaintiff alleges that both works are delivered at a "fast

tempo," the tempo of Defendants' production is decidedly faster.  The works also are distinct in

terms of key and melody:  Plaintiff's presentation is delivered as a spoken, non-melodic text,

while Defendants' follows the melody of the William Tell Overture.

Additional differences exist with respect to both the form and substance of the two songs.

Defendants' song, for example, is written from Renfroe's personal perspective as a mother, while

Plaintiff's is written from his recollection of what his mother has said to him when he was a

child.  While Defendants' song is a collection of words that mothers typically say to their

children throughout the day, Plaintiff's is a list of motherly commands and the consequence for

disobeying them.  Defendants' lyrics consist of advice ("Eat your breakfast the experts tell us it's

the most important meal of all"), commands ("Be polite, make a friend don't forget to share"),

questions ("are you wearing that?"), observations ("It must be your father's DNA"), reminders

("Don't forget you gotta feed the cat," "Don't forget – I love you"), and reasoning ("Because . . .

I said so").  Dkt. # 21, ¶ 13.  Plaintiff's lyrics, by contrast, generally consist of pairings in which

1   the first element is a command ("Hurry up and get ready for school") and the second is the

2   consequence ("Otherwise you end up being a stupid fool").  Dkt. # 32, p. 2.

3         Although Plaintiff claims that both works share a common sequence of events in that

4   both begin in the morning and end in the evening, the test for substantial similarity "compares,

5   not the basic plot ideas for stories, but the actual concrete elements that make up the total

6   sequence of events."  *Berkic*, 761 F.2d at 1293.  The generic chronology contained in the "Mom

7   Song" is not protectable.  *Id.*

8         Nor can the broad theme or plot idea of "motherly advice" be protected under the

9   copyright law.  *Cavalier*, 297 F.3d at 823 (*citing Kouf*, 16 F.3d at 1045).  In *Cavalier*,

10   example, the court noted that broad plot ideas similar to those at issue here – i.e., "kids fighting

11   insurmountable dangers," "miseries of domestic life," "romantic frolics at the beach" – are not

12   protectable against copying.  The same result follows here:  The general plot idea of a mother

13   giving orders is not protectable.

14         In sum, there is no triable issue of fact as to whether Defendants' "Momisms" song is

15   substantially similar to Plaintiff's "Mom Song."  The Court therefore concludes, as a matter of

16   law, that the two songs are not substantially similar.  Because the "Mom Song" is not

17   substantially similar to the "Momisms" song, Plaintiff's claim of copyright infringement must be

18   dismissed.

19       C.    <u>Lanham Act</u>

20         Plaintiff claims that Defendants violated the Lanham Act by infringing upon his "Mom

21   Song" mark through a false designation of origin.  Dkt. #1, at p. 4-5.  This claim must fail

22   because the term "Mom Song" is not a protectable mark.

23

24

1    In analyzing a claim of trademark infringement, the court's first step is to determine

2    whether the plaintiff has a protected mark. *Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 783

3    (9th Cir. 2002) (validity of the trademark is a threshold question since "[a] necessary

4    concomitant to proving infringement is, of course, having a valid trademark; there can be no

5    infringement of an invalid mark"). Once the court makes that determination, it may then proceed

6    to the question of whether the defendant infringed the plaintiff's mark.

7    Marks are placed into one of five categories – fanciful, arbitrary, suggestive, descriptive

8    or generic – based upon their level of distinctiveness. *KP Permanent Make-Up, Inc. v. Lansting*

9    *Impression I., Inc*., 408 F.3d 596, 602 (9th Cir. 2005). Arbitrary marks consist of words that

10   have no connection to the product, and fanciful marks are "coined" words or phrases (e.g.,

11   "Kodak" for cameras). *Surfvivor Media, Inc. v. Survivor Productions*, 406 F.3d 625, 632 (9th

12   Cir. 2005). Suggestive marks do not directly describe the product but require "the exercise of

13   some imagination . . . to associate [the] mark with the product." *Id.* (*citing Kendall-Jackson*

14   *Winery v. E. & J. Gallo Winery*, 150 F.3d 1042, 1047 (9th Cir. 1998) (noting, for example, that

15   "Slickcraft" is a suggestive mark for a boat)). Descriptive marks define a specific characteristic

16   of the product, such as "honey roasted" peanuts. Descriptive marks do "not receive trademark

17   protection unless they acquire sufficient 'secondary meaning' to create an association between

18   the mark and the product." *Surfvivor Media, Inc.*, 406 F.3d at 632 (*citing Kendall Jackson*

19   *Winery*, 150 F.3d at 1047).

20   Generic marks "give the general name of the product; they embrace an entire class of

21   products" and receive no trademark protection. *Kendall-Jackson Winery*, 150 F.3d at 1047;

22   RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 15 (1995) (generic marks tend to describe the

23   general category, type or class of goods of the product). To determine genericness, courts often

24

1  refer to the "who-are-you/what-are-you" test.  *Filipino Yellow Pages, Inc. v. Asian Journal*

2  *Publi'n, Inc.*, 198 F.3d 1143, 1147 (9th Cir. 1999).  While a valid trademark answers the former

3  question, a generic mark answers the latter.  *Id.*  "If the primary significance of the trademark is

4  to describe the *type of product* rather than the *producer*, the trademark [is] a generic term and

5  [cannot be] a valid trademark."  *Id.* (*quoting Anti-Monopoly, Inc. v. Gen. Mills Fun Grp.*, 611

6  F.2d 296, 304 (9th Cir. 1979)) (emphasis in original).

7       "Mom Song" is a generic mark that is not protectable.  Indeed, virtually any song

8  regarding the broad topic of motherhood could appropriately bear the same mark.  The "Mom

9  Song" mark, which simply names the product to which it is attached, does not require "the

10  exercise of some imagination . . . to associate [the] mark with the product," and, although the

11  mark is descriptive in the most literal sense, the primary significance of the mark is to describe

12  the *type* of product (i.e., a song about a mom) rather than its producer.  *Filipino Yellow Pages,*

13  *Inc.*, 198 F.3d at 1147.  Because the term "Mom Song" "embrace[s] an entire class of products"

14  (i.e., songs about moms), it can receive no trademark protection.  *Kendall-Jackson Winery*, 150

15  F.3d at 1047.  Allowing trademark protection for such a generic phrase would place an undue

16  burden on competition, contrary to the goals of trademark law.  *Intel Corp. v. Terabyte Int'l, Inc.*,

17  6 F.3d 614, 618 (9th Cir. 1993).

18       Because the "Mom Song" mark is not protectable, Plaintiff's claim that Defendants

19  infringed upon that mark must be dismissed.  *Tie Tech, Inc.*, 296 F.3d at 783.

20       D.    <u>Other Pending Motions</u>

21       During the pendency of the instant motion, the parties have filed a number of discovery

22  motions.  In Dkt. ## 35 and 37, Plaintiff seeks a continuance of the instant motion in order to

23  take discovery regarding copyright registration documents allegedly obtained by Defendants

24

1  with respect to a book they published entitled, "If It's Not One Thing, It's Your Mother" (the

2  "Book").  Plaintiff bases this request upon his belief that the Book contains content from his

3  "Mom Song."  Plaintiff's request for a continuance is DENIED, as Defendants attached a

4  published version of the Book to their summary judgment motion, Dkt. # 21-3, Ex. K, and

5  Plaintiff had not demonstrated the relevancy of the copyright registration documents or other

6  requested discovery materials.

7        The remaining discovery motions, Dkt. ## 44, 45, and 47, are DENIED as moot.

8                        **III. <u>CONCLUSION</u>**

9        For all of the foregoing reasons, the Court orders as follows:

10       (1)      Defendants' motion for Summary Judgment (DKT. #20) is GRANTED.

11       (2)      All other pending motions are DENIED.

12       (3)      This action is DISMISSED in its entirety.

13
   Dated this 15 day of February 2012.
14

15

16

17                        RICARDO S. MARTINEZ
                          UNITED STATES DISTRICT JUDGE
18

19

20

21

22

23

24

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 11